**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------- X

SHARON LAROC and ALTON JAMIESON,

                              Plaintiffs,

      -against-

THE CITY OF NEW YORK, a municipal entity;
NYPD Sergeant DAVID GRIECO (in his individual
capacity); NYPD Police Officer JAMES LUKESON
(in his individual capacity),

                           Defendants.

------------------------------------------------------------------------- X

**COMPLAINT**

**JURY TRIAL DEMANDED**

Case No. 20-cv-5227

Plaintiffs SHARON LAROC and ALTON JAMIESON, by and through their attorney Joshua S. Moskovitz, Esq., allege as follows:

## PRELIMINARY STATEMENT

1.     Early in the morning of June 13, 2019, New York City police officers raided a multi-family residence at 451 East 52nd Street in Brooklyn. They arrested Sharon Laroc, who was 51 years old at the time and an EKG technician at a hospital. She lived in the second-floor apartment with her husband and adult sons and had never been arrested before. Sharon's 7 year-old grandson, who had spent the night, was there when the police broke in. Officers led Sharon out of the house in handcuffs. Police entered the basement apartment where 38-year-old Alton Jamieson lived. Alton is paraplegic. Officers found Alton sitting on his bed, with his wheelchair adjacent, and an officer kicked him in the legs. Officers handcuffed Alton and carried him out of his apartment.

2.     There was no legal basis to arrest either Sharon or Alton. Officer James Lukeson later told the District Attorney's Office that Sharon and Alton were gang members who

possessed guns and drugs. These allegations were false. The NYPD later acknowledged in response to a Freedom of Information Law request that Sharon and Alton have no gang affiliations. According to Officer Lukeson, the guns and drugs were found in a detached garage, but there was no reason to believe Sharon or Alton had any connection to those items or the contents of the garage. The District Attorney's Office concluded there was "insufficient evidence" Sharon and Alton had committed any offense and declined to prosecute them.

3.      Although Sharon and Alton were released from custody without charges, they had been incarcerated for more than 30 hours, and both had to be taken to the hospital before they were released due to the effects of their arrests. Property was taken from Sharon that was never returned and she had missed work and had to explain to her supervisor why.

4.      The officers also left excessive and unreasonable damage to Sharon's apartment: holes in walls, cut open speakers, and broken doors. This was the result of the deliberate indifference of the City of New York to the obvious need to train its police officers that the constitution prohibits such damage during a search. Despite notice of the need for this training, the City has failed to provide it and has failed to properly supervise and discipline officers who cause unnecessary damage.

5.      The City of New York has also failed to discipline and supervise the officers responsible for Sharon and Alton's arrests: David Grieco and James Lukeson. **Sgt. Grieco has been the subject of at least 30 civilian complaints (totaling 69 separate charges) and at least 32 lawsuits.** This was not the first time Sgt. Grieco had supervised a team that falsely accused someone of possessing contraband to which they had no connection and the District Attorney declined to press charges. The NYPD's failure to supervise and discipline Sgt. Grieco represents a gross dereliction of its duty to protect the constitutional rights of the people of New York City.

6.      Officer Lukeson has likewise been the subject of at least five substantiated civilian complaints and five federal civil rights lawsuits.  Five years before wrongfully arresting Sharon and Alton and falsely accusing of them of being gang members and possessing guns and drugs, Officer Lukeson was found to have violated the constitutional rights of another person after a jury trial before the Honorable Jack B. Weinstein.  The jury heard testimony that Officer Lukeson made false allegations and submitted perjured testimony against the plaintiff and awarded him $180,000 against Officer Lukeson (and another $380,000 in damages against two other NYPD officers).  The NYPD did not then properly discipline or supervise Officer Lukeson, which led to the injuries suffered by Sharon Laroc and Alton Jamieson.

## JURISDICTION AND VENUE

7.      This action is based on 42 U.S.C. § 1983 for violations of plaintiffs' rights secured by the Fourth and Fourteenth Amendments to the United States Constitution.

8.      This court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

9.      Venue is proper pursuant to 28 U.S.C. § 1391 in the Eastern District, where the events giving rise to this action took place.

## JURY DEMAND

10.     Plaintiffs demand a trial by jury in this action on each and every one of their claims for which jury trial is legally available.

## THE PARTIES

11.     Plaintiff SHARON LAROC is a citizen of the United States and of the State of New York and at all times relevant to this complaint, she resided in Kings County.

12.     Plaintiff ALTON JAMIESON is a citizen of the United States and of the State of New York and at all times relevant to this complaint, she resided in Kings County.

13.     Defendant THE CITY OF NEW YORK ("the City") is a municipal entity created and authorized under the laws of the State of New York.

14.     The City is authorized by law to maintain a police department and does maintain the New York City Police Department (hereinafter referred to as "NYPD"). The NYPD acts as the City's agent and the City assumes the risks incidental to the maintenance of a police department and the employment of police officers.

15.     Defendant NYPD Sergeant DAVID GRIECO was, at all times relevant to this complaint, an NYPD sergeant who participated in the search of Plaintiffs' apartment and the arrest of Plaintiffs on June 13, 2019. He is sued in his individual capacity.

16.     Defendant NYPD Police Officer JAMES LUKESON, was, at all times relevant to this complaint, an NYPD police officer. He is identified on the NYPD arrest report as the "arresting officer" of the Plaintiffs on June 13, 2019. He is sued in his individual capacity.

17.     Upon information and belief, at all relevant times, the individual defendants were and are citizens of the United States and the State of New York.

18.     At all relevant times, the individual defendants were employed by the City and acted under color of law in the course and scope of their duties and authority as officers, agents, servants, and employees of the NYPD and the City.

19.     At all relevant times, the individual defendants violated clearly established rights under the Fourth and Fourteenth Amendments to the United States Constitution of which reasonable law enforcement officers in their respective circumstances would have known.

## COMPLIANCE WITH New York GENERAL MUNICIPAL LAW

20.     Plaintiffs served Notices of Claim upon the City by electronic means, as prescribed by the Office of the New York City Comptroller, on September 10, 2019, within ninety days of the accrual of Plaintiffs' claims.

21.     Plaintiffs received electronic confirmation that their Notices of Claim were received by the New York City Comptroller's Office.

22.     Defendant City conducted an examination of Plaintiffs pursuant to New York General Municipal Law § 50-h on January 21, 2020.

23.     More than thirty days have elapsed since the Notice of Claim was served on the New York City Comptroller's Office, and the City has neglected or refused to adjust or pay said claims.

24.     This action is filed within one year and ninety days of the events giving rise to Plaintiff's claims, as tolled by the Executive Orders of the Governor of New York due to COVID.

## STATEMENT OF FACTS

**I.      The search of the Plaintiffs' apartment and the Plaintiffs' arrests.**

25.     Sharon Laroc resides in the second-floor apartment of 451 East 52nd Street, Brooklyn.

26.     451 East 52nd Street is a multi-family home.

27.     Alton Jamieson lives in the basement apartment of 451 East 52nd Street.

28.     There is a separate, outside entrance to the basement apartment.

29.     A garage is located at 451 East 52nd Street that is not connected to the house.  The garage is open and anyone can access it by approaching from the driveway, which is not gated off from the street.

30.     In the morning hours of June 13, 2019, New York City Police Department officers, including Defendants NYPD Sgt. David Grieco and Police Officer James Lukeson, forcefully entered Sharon Laroc's and Alton Jamieson's apartments at 451 East 52nd Street.

31.     The officers did not have consent to enter either apartment.

32.     Upon information and belief, Sgt. Grieco was supervising some or all of the officers who entered 451 East 52nd Street on June 13, 2019, and was in charge of the operation.

33.     Officers, including Sgt. Grieco, went into Sharon Laroc's apartment.

34.     An officer pointed a gun at Sharon Laroc's head.

35.     Officers broke into Alton Jamieson's apartment in the basement.

36.     Alton Jamieson is a paraplegic and cannot use his legs.

37.     When officers entered his apartment, he was sitting up in bed, having been awoken by the noise of the police breaking in.

38.     Although Alton Jamieson's wheelchair was next to the bed, an officer kicked him in the legs.

39.     Sharon Laroc and Alton Jamieson were taken out of their apartments in handcuffs in front of neighbors and were placed in a police vehicle.

40.     Sharon Laroc and Alton Jamieson were arrested before the building was searched.

41.     They were transported to the 67th Precinct.

42.     Sharon Laroc informed officers that she needed to take medication for hypertension, among other things.  She was allowed to call her son's girlfriend and asked her to

bring her medication, but even though her son's girlfriend brought the medication to the precinct, officers would not allow her to take it.

43.     In the middle of the day, an officer or officers said they would call an ambulance for Sharon Laroc but an ambulance did not come until approximately 6:30 p.m.

44.     Sharon Laroc was transported to the hospital where a doctor informed officers that Sharon needed her hypertension medication.

45.     Meanwhile, Alton Jamieson was also taken to the hospital because of back pain he was experiencing after the officer kicked him.

46.     After being taken back to the 67th Precinct, Alton Jamieson was taken to the hospital a second time because he was continuing to have back pain and started having pains in his side.

47.     Sharon Laroc and Alton Jamieson were eventually transported to Central Booking.

48.     Officer Lukeson had prepared a false police report and submitted false statements to the District Attorney's Office, including that Sharon Laroc and Alton Jamieson were gang members and had possessed guns and drugs found in garage at 451 East 52nd Street.

49.     Sharon Laroc and Alton Jamieson were released from custody without charges around 1:00 p.m. on June 14, 2019.

50.     The District Attorney's Office concluded that there was "insufficient evidence to prosecute" because the contraband was "recovered from a communal, detached garage" that was separate from the building where Officer Lukeson observed Sharon Laroc and Alton Jamieson.

51.     Nothing connected Sharon Laroc or Alton Jamieson to the contraband found in the garage.

52.    Property, including cash and an iPhone, were taken from Sharon Laroc when she was arrested; the cash was never returned.

53.    The officers who searched Sharon Laroc's apartment caused unreasonable, excessive, and unnecessary damage.

54.    Among other things, they cut open speakers, made holes in walls, broke doors, and strewed clothes and personal items throughout the apartment.

55.    In addition to the damage and loss of property, the Plaintiffs suffered the loss of their liberty, physical and mental/emotional pain and suffering, distress, humiliation, fear, the violation of their federal constitutional rights, and other injuries.

**II.    The City's deliberate indifference to excessive damage caused during searches.**

56.    The City of New York has failed to properly train its police officers that "[e]xcessive or unnecessary destruction of property" during a search violates the Fourth Amendment. *United States v. Ramirez*, 523 U.S. 65, 71 (1998) (citation omitted).

57.    The need to train officers that excessive and unnecessary damage violate the Fourth Amendment is obvious, and the City's failure to ensure that its officers receive such training amounts to deliberate indifference to the constitutional rights of the people of the City of New York.

58.    The NYPD's Patrol Guide, which spans thousands of pages detailing hundreds of police procedures, including "search warrant execution" (Procedure 212-105), does not contain a statement or guideline that the Fourth Amendment prohibits excessive and unnecessary damage during the execution of a search warrant.

59.     The City has received numerous complaints about excessive and unnecessary damage caused by NYPD officers during home searches through notices of claims, lawsuits, complaints to the NYPD, and complaints to the Civilian Complaint Review Board.

60.     The City knows that many of its officers are unaware that there is a limit on damage that is permissible in the execution of a search.

61.     These problems, while obvious, were made clear in *McClary v. City of New York* et al., No. 12-cv-118 (E.D.N.Y.).

62.     In the *McClary* case, on June 25, 2013, then-Chief Judge Carol Bagley Amon permitted the plaintiff to add a *Monell* claim based on the City's failure to train its officers in the constitutional limit on damage during search warrant execution.

63.     The evidence adduced in the *McClary* case, which was presented to Judge Amon in support of the plaintiff's motion for leave to amend, included:

> i.      Sgt. Sonia Christian's testimony that she had received no training during or after the Police Academy on how to conduct a search of a house, but had been instructed that officers are allowed to search anywhere an object of the search may physically be located.

> ii.     Sgt. Christian's testimony that her understanding was that "when you're looking for a handgun, which is presumably a small object, virtually any space that can be opened up becomes fair game for the search."

> iii.    Officer Matthew Vorraro's testimony that he did not remember receiving any training at the Police Academy on how to search a house or any training at anytime on minimizing or how to minimize damage while executing a search warrant.

> iv.     Officer Mark Kipybida's testimony that he did not receive any training at the Police Academy on how to execute a search warrant; nor did he receive any training about minimizing damage during the execution of a search warrant.

> v.      Lt. Andrew Hepworth's testimony that in his twenty-four years as an NYPD officer, the only training he could recall receiving on executing a search warrant was after he was promoted to sergeant, and that the training was only given to "certain supervisors." He did not testify that the training covered the issue of limiting damage during the execution of the search.

vi.     Officer Gregory Michaels's testimony that he did not receive any training at the Police Academy in how to execute a search warrant, did not receive any training at the Police Academy on minimizing damage during the execution of a search warrant, and did not receive any training after graduating from the Academy on how to execute a search warrant.

vii.    Captain Craig Adelman's testimony that he was not aware of any guidelines, instructions, or training that explained that property damage should be minimized during the execution of search warrants.

viii.   Officer Ronald Schmidt's testimony that he did not receive any training on how to execute a search warrant.

64.     Additional evidence adduced in the *McClary* case demonstrated that NYPD officers are not properly trained, supervised, or disciplined regarding the limitation on damage during the execution of search warrants.

65.     On September 24, 2013, NYPD Chief John Essig testified at a deposition in the *McClary* case on behalf of the City of New York pursuant to Fed. R. Civ. P. 30(b)(6) regarding the NYPD's policies on how officers are instructed to execute search warrants.

66.     Chief Essig testified to the following facts:

i.      he knew of no Patrol Guide provision or training materials that explained the constitutional standard that only reasonable damage was permitted during search warrant execution;

ii.     he did not believe there is a limitation on damage that is permissible in the execution of a search (he later amended his testimony to say that "the rule of thumb is the reasonableness of the damage necessary to do it, to conduct a search is really the guideline that we instruct officers," but he acknowledged that he only arrived at this clarification during a break in which he "spoke to counsel who said I might have misunderstood [the] question");

iii.    the only training materials addressing the execution of search warrants that are provided to police officers describe what officers can look for and where they can look, but do not provide an explanation on how the search should be carried out;

iv.     in the training materials he had reviewed to prepare for his deposition, he found no discussion about the limitation on damage that is acceptable during the execution of a search warrant;

  v.  there are no materials given to new recruits at the Police Academy and no classroom instruction provided to new recruits that explain there are limitations on damage that can be caused during the execution of a search warrant;

  vi.  there is no training provided at the Academy for new recruits on the manner of executing search warrants;

  vii.  there is no classroom training for new supervisors about the manner in which search warrants should be executed;

  viii.  he had seen no lesson plans for instruction, either for recruits or supervisors, about the manner in which search warrants should be executed;

  ix.  officers are trained that they can look anywhere they thought a piece of evidence could be, which included looking inside a couch; and

  x.  he was not aware of any officer who had been disciplined for problems during the execution of a search warrant.

  67.  Upon information and belief, following the *McClary* case, and before the search of plaintiff Laroc's apartment, the City did not amend the Patrol Guide to include a statement or guideline about the constitutional limitation on property damage during the execution of search warrants.

  68.  Upon information and belief, following the *McClary* case, and before the search of plaintiff Laroc's apartment, the City did not implement training so that its police officers would know that the constitution prohibits excessive and unnecessary damage during the execution of search warrants.

  69.  Upon information and belief, following the *McClary* case, and before the search of plaintiff Laroc's apartment, the City did not implement policies to ensure that NYPD officers are properly supervised in the manner of executing search warrants to ensure that excessive and unnecessary property damage is not caused.

  70.  Upon information and belief, following the *McClary* case, and before the search of plaintiff Laroc's apartment, the City did not implement policies to ensure that NYPD officers

are disciplined if they cause excessive or unnecessary property damage while executing search warrants to ensure that such damage is not caused.

**III.    The City's deliberate indifference to the need to supervise and discipline Sgt. Grieco and Officer Lukeson.**

71.     The City has failed to properly supervise and discipline Defendants Grieco and Lukeson even though it has known that such discipline and supervision is necessary to prevent the further violation of constitutional rights of people of the City of New York.

72.     Even before he was promoted to sergeant, Defendant Grieco was the subject of numerous complaints concerning improper and/or illegal home searches, causing unnecessary and excessive damage during the execution of searches, and making false arrests.

73.     Sgt. Grieco has been named as a defendant in numerous federal and state lawsuits concerning constitutional violations, including:

a.    *Wilson v. City of N.Y.*, No. 10-cv-4206 (E.D.N.Y.) (settled for $25,000).

b.    *Inman v. Grieco*, No. 11-cv-1810 (E.D.N.Y.) (*pro se* case dismissed).

c.    *Jimenez-Jenkins v. City of N.Y.*, No. 12-cv-0002 (E.D.N.Y.) (settled for $24,000).

d.    *Jones v. City of N.Y.*, No. 12-cv-01580 (E.D.N.Y.) (settled for $65,000).

e.    *Mitchell v. City of N.Y.*, No. 12-cv-0294 (E.D.N.Y.) (settled for undisclosed amount).

f.    *Myrick v. City of N.Y.*, No. 12-cv-2544 (E.D.N.Y.) (settled for $35,000).

g.    *Foster v. City of N.Y.*, No. 13-cv-5108 (E.D.N.Y.) (settled for $30,000).

h.    *Bannister v. City of N.Y.*, No. 13-cv-5886 (E.D.N.Y.) (settled for $75,500).

i.    *Kitchens v. City of N.Y.*, No. 13-cv-6105 (E.D.N.Y.) (settled for $11,500).

j.    *Shepard v. City of N.Y.*, No. 13-cv-6142 (E.D.N.Y.) (settled for $3,500).

k.    *Perry v. City of N.Y.*, No. 13-cv-7071 (E.D.N.Y.) (settled for $21,250).

l.    *Johnson v. City of N.Y.*, No. 13-cv-7173 (E.D.N.Y.) (Rule 68 judgment for $7,501 plus $15,000 in attorney's fees).

m.  *Walker v. City of N.Y.*, Index No. 5360/2014 (Kings Cnty.) (settled for $22,500).

n.  *Walker v. City of N.Y.*, Index No. 7761/2014 (Kings Cnty.) (settled for $60,000).

o.  *Goodloe v. City of N.Y.*, Index No. 515363/2015 (Kings Cnty.) (dismissed on jurisdictional grounds).

p.  *Walston v. City of N.Y.*, No. 15-cv-4480 (E.D.N.Y.) (summary judgment to defendants).

q.  *Green v. City of N.Y.*, No. 15-cv-6041 (E.D.N.Y.) (settled for $10,000).

r.  *Burgess v. City of N.Y.*, Index No. 523191/2016 (Kings Cnty.).

s.  *McClarin v. City of N.Y.*, No. 16-cv-6846 (E.D.N.Y.) (pending)

t.  *Mathison v. City of N.Y.*, Index No. 501518/2017 (Kings Cnty.) (settled for $12,000).

u.  *Scott v. City of N.Y.*, No. 17-cv-1141 (E.D.N.Y.) (settled for $52,500).

v.  *Vargas v. City of N.Y.*, Index No. 502637/2018 (Kings Cnty.) (pending).

w.  *Grantham v. City of N.Y.*, Index No. 514006/2018 (Kings Cnty.) (pending)

x.  *Hines v. City of N.Y.*, No. 18-cv-4678 (E.D.N.Y.) (settled for $75,500).

74.  The City has paid over $500,000 as a result of these lawsuits.

75.  Most, or all, of these lawsuits include claims of illegal searches and arrests.

76.  Upon information and belief, in at least twenty of these cases, the plaintiff was cleared of criminal charges, and in three other cases, the Brooklyn District Attorney's office declined to prosecute the plaintiffs.

77.  Upon information and belief, Defendant Grieco has been the subject of at least five Internal Affairs Bureau investigations.

78.  In addition to these lawsuits and internal investigations, complaints about Sgt. Grieco's conduct have been reported publicly in news reports dating back to 2013.

79.  Despite the incredible number of complaints against him, Sgt. Grieco was promoted to a supervisory position before the arrest of the Plaintiffs.

80.     Similarly, Defendant Lukeson has been the subject of numerous misconduct complaints concerning improper and/or illegal stops, searches, and arrests; excessive force; and making false criminal allegations.

81.     Officer Lukeson has been named as a defendant in the following federal lawsuits concerning constitutional violations he committed as an NYPD officer:

   a.   *Davis v. Velez*, No. 12-cv-1219 (E.D.N.Y.) (plaintiff's verdict for $560,000 plus in $490,000 in plaintiff's attorney's fees).

   b.   *Diaz v. Herbert*, No. 13-cv-1675 (E.D.N.Y.) (Rule 68 judgment for $10,001 plus reasonable attorney's fees)

   c.   *Gonzalez v. N.Y. Police Dep't*, No. 09-cv-0685 (E.D.N.Y.) (settled for $7,500).

   d.   *McClain v. City of N.Y.*, No. 18-cv-11836 (S.D.N.Y.) (Rule 68 judgment for $7,003 plus $18,000 in plaintiffs' attorney's fees and costs).

   e.   *Abraham v. N.Y. City Police Dep't*, No. 15-cv-5208 (E.D.N.Y.) (*pro se* case settled for an undisclosed amount).

82.     The City has paid over $1,000,000 as a result of these lawsuits.

83.     In 2015 – four years before Officer Lukeson falsely accused Sharon Laroc and Alton Jamieson of possessing guns and drugs – a jury returned a verdict against Officer Lukeson and other officers in the *Davis* case for falsely accusing the plaintiff of possessing guns and drugs, which he did not.

84.     Despite these complaints and findings of similar constitutional violations, the City failed to properly supervise or discipline Officer Lukeson before the arrest of the Plaintiffs.

85.     In total, the City has paid well over $1.5 million as a result of lawsuits involving Sgt. Grieco and Officer Lukeson, which does not account for the full cost to the City of those lawsuits (*e.g.*, litigation costs and the salaries of City lawyers).

86.     The injuries suffered by the Plaintiffs are the result of the City's failure to properly supervise and discipline Defendants Grieco and Lukeson

## FIRST CAUSE OF ACTION
### 42 U.S.C. § 1983 Against the Individual Defendants

87.     Plaintiffs reallege and incorporate by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

88.     In committing the acts and omissions complained of herein, the individual defendants acted under color of state law, individually and in concert, to deprive plaintiffs of their constitutionally protected rights under the Fourth and Fourteenth Amendments to the United States Constitution, including, but not limited to the right to be free from unreasonable searches and seizures, the right to be free from arrest without probable cause, the right to be free from deprivation of liberty and property without due process of law, the right to be free from detention and prosecution without probable cause.

89.     In committing the acts and omissions complained of herein, the Defendants breached their affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence.

90.     As a direct and proximate result of the defendants' deprivation of the Plaintiffs' constitutional rights, the Plaintiffs suffered the injuries and damages set forth above.

91.     The unlawful conduct of the individual defendants was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed.

## SECOND CAUSE OF ACTION
### 42 U.S.C. § 1983 Against the City of New York
### Deliberate Indifference to the Misconduct of Sgt. Grieco and Officer Lukeson

92.     Plaintiffs reallege and incorporate by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

93.     In an Order dated November 25, 2009, in *Colon v. City of New York*, 09-cv-0008 (E.D.N.Y.), the Hon. Jack B. Weinstein reflected on the "evidence of repeated, widespread

falsification by arresting police officers of the New York City Police Department" and the "evidence of an attitude among officers that is sufficiently widespread to constitute a custom or policy by the city approving" the falsification of the reasons for an arrest.

94.     The City of New York, acting through the NYPD and its agents, officers, and employees, has acted with deliberate indifference to the rights of the people of the City of New York to not be subjected to unconstitutional conduct by Sgt. David Grieco and Police Officer James Lukeson, specifically, the falsification of arrest evidence and allegations.

95.     Despite its awareness of numerous complaints against Sgt. Grieco and Officer Lukeson, the City and the NYPD have remained indifferent and failed to adequately supervise or discipline Sgt. Grieco and Officer Lukeson to ensure that they do not violate the constitutional rights of people of the City of New York.

96.     The City's deliberate indifference was the moving force of the Plaintiffs' injuries complained of herein.

**THIRD CAUSE OF ACTION**
**42 U.S.C. § 1983 Against the City of New York**
**Deliberate Indifference to Damage Caused During Execution of Search Warrants**

97.     Plaintiffs reallege and incorporate by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

98.     The City of New York, acting through the NYPD and its agents, officers, and employees, has acted with deliberate indifference to the rights of the people of the City of New York to not be subjected to unconstitutional property damage during the execution of searches.

99.     Despite the obvious need to train its police officers that the Constitution prohibits excessive or unnecessary property damage in the execution of a search, the City has failed to provide this training.

100. The City has known that NYPD officers routinely cause excessive or unnecessary property damage in the execution of a search.

101. The City has known that NYPD officers do not understand the constitutional limitations on causing excessive or unnecessary property damage in the execution of a search.

102. In the face of this continuing problem, the City has remained indifferent and failed to adequately train, supervise, and discipline NYPD officers to ensure that they do not cause excessive or unnecessary property damage in the execution of a search.

103. The damage to the Plaintiff Laroc's property is of the kind seen in the *McClary* case and other cases where NYPD officers have caused unnecessary damage during the execution of a search warrant.

104. The damage to Plaintiff Laroc's property was caused by the City's failure to properly train its officers and/or its practice of causing excessive and unnecessary property damage during search warrant execution.

105. The City's deliberate indifference was the moving force of the unconstitutional property damage complained of herein.


**FOURTH CAUSE OF ACTION**
**Violations of the New York State Constitution**

106. Plaintiffs reallege and incorporate by reference each and every allegation set forth in the foregoing paragraphs as if fully set forth herein.

107. The individual defendants and other NYPD police officers subjected plaintiffs to the foregoing acts and omissions without due process of law, thereby depriving plaintiffs of the

rights, privileges, and immunities guaranteed by Article 1 §§ 1, 6, and 12 of the New York State Constitution.

108.     As a direct and proximate result of the deprivations of their rights, privileges, and immunities guaranteed by the New York State Constitution, plaintiffs suffered the injuries and damages set forth above.

109.     The City is vicariously liable for this conduct.

## FIFTH CAUSE OF ACTION
**Battery**

110.     Plaintiffs reallege and incorporate by reference each and every allegation set forth in the foregoing paragraphs as if fully set forth herein.

111.     Without just cause or consent, an NYPD police officer, acting within the scope and course of his duties as an NYPD police officer, willfully and maliciously used physical force against plaintiff Jamieson, causing him injuries.

112.     The officer committed the foregoing acts intentionally, willfully, and with malicious disregard for plaintiff Jamieson's rights, and is therefore liable for punitive damages.

113.     As a direct and proximate result of the officer's conduct, plaintiff Jamieson suffered the injuries and damages set forth above.

114.     The City is vicariously liable for this conduct.

## SIXTH CAUSE OF ACTION
**Assault**

115.     Plaintiffs reallege and incorporate by reference each and every allegation set forth in the foregoing paragraphs as if fully set forth herein.

116.     An NYPD police officer, acting within the scope and course of his duties as an NYPD police officer, acted with the intent to cause plaintiff Laroc to fear for her own physical safety and to fear that violent contact was imminent by pointing a gun at plaintiff Laroc's head.

117.     The officer acted with the intent to harass, annoy, and/or alarm plaintiff Laroc.

118.     As a result of the officer's conduct, plaintiff Laroc became apprehensive and feared for her own physical safety and feared that violent contact was imminent.

119.     As a direct and proximate result of the officer's conduct, plaintiff Laroc suffered the injuries and damages set forth above.

120.     The City is vicariously liable for this conduct.

**SEVENTH CAUSE OF ACTION**
**False Imprisonment**

121.     Plaintiffs reallege and incorporate by reference each and every allegation set forth in the foregoing paragraphs as if fully set forth herein.

122.     Plaintiffs were detained and held under the imprisonment and control of the individual defendants under false pretenses.

123.     The individual defendants falsely imprisoned plaintiffs without warrant, authority of law, or probable cause.

124.     The individual defendants unlawfully and intentionally detained and confined plaintiffs against their will and without their consent, and without privilege, probable cause, or valid legal process.

125.     Plaintiffs were conscious of his confinement.

126.     As a direct and proximate result of the individual defendants' conduct, plaintiffs suffered the injuries and damages set forth above.

127.     Defendant City is vicariously liable for this conduct.

## EIGHTH CAUSE OF ACTION
### Negligent Hiring, Screening, Retention, Training, Supervision, and Discipline

128.     Plaintiffs reallege and incorporate by reference each and every allegation set forth in the foregoing paragraphs as if fully set forth herein.

129.     The City, acting through the NYPD, has a duty to use reasonable care in the hiring, screening, retention, training, supervision, and discipline of their employees, including police officers.  The City and the NYPD failed to discharge this duty.

130.     The City and the NYPD knew of multiple complaints and substantiated findings of misconduct and constitutional violations by the individual defendants prior to the violations of the plaintiffs' rights.

131.     The City and NYPD failed to investigate and correct the problems with individual defendants' behavior.

132.     The violations of plaintiffs' rights by the individual defendants was a foreseeable consequence of the City's and NYPD's failure to adequately screen, train, reprimand, or discipline, the individual defendants.

133.     As a direct and proximate result of the individual defendants' conduct, plaintiffs suffered the injuries and damages set forth above.

## DEMAND FOR RELIEF

**WHEREFORE**, plaintiffs demand the following relief against the defendants, jointly and severally:

(a)     compensatory damages in an amount just and reasonable and in conformity with the evidence at trial;

(b)     punitive damages from the individual defendants to the extent allowable by law;

(c)     attorneys' fees;

(d)     the costs and disbursements of this action;

(e)     interest; and

(f)     such other and further relief as this Court deems just and proper.

Dated: New York, New York
November 2, 2020

THE LAW OFFICE OF JOSHUA MOSKOVITZ
233 Broadway, Suite 2220
New York, New York 10279
(212) 380-7040

By: _____
Joshua S. Moskovitz